## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **STEYR ARMS, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | **Case No.: 2:15-CV-1718-MHH** |
| | ) | |
| **BERETTA USA CORP.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND CLAIM CONSTRUCTION ORDER

This is a patent infringement action. Plaintiff Steyr Arms, Inc. alleges that defendant Beretta USA Corporation infringes the sole claim of U.S. Patent No. 6,260,301, entitled "Pistol, Whose Housing Is Composed of Plastic" ("the '301 Patent"). (Doc. 1, ¶ 7; Doc. 1-1, p. 1). Currently before the Court are the parties' Joint Proposed Claim Construction Statement, their opening claim construction briefs, and their responsive claim construction briefs. (Docs. 28, 30, 31, 32, & 33). The parties identified three claim limitations that are in dispute. (Doc. 28). Upon careful consideration of the '301 Patent, the parties' submissions, and the controlling law, the Court now construes, or otherwise addresses, the three disputed claim limitations.

# I.    Legal Standard for Patent Claim Construction

The Patent Act mandates that a patent specification, which is the written portion of a patent, "shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the invention."   35 U.S.C. § 112(b) (2012); 35 U.S.C. § 112, ¶ 2 (2000).[1]   "It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (2005) (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)); *see also Thorner v. Sony Computer Entertainment America LLC*, 669 F.3d 1362, 1367 (Fed. Cir. 2012) ("It is the claims that define the metes and bounds of the patentee's invention.") (citation omitted).

To determine if a patent claim has been infringed, a court first must determine the meaning and scope of the allegedly infringed claims. *E.g., Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1320 (Fed. Cir. 2003) (citation omitted).   Determining the meaning and scope of a patent claim is the purpose of claim construction, and it is a matter of law for the court. *O2 Micro Intern, Ltd. v.*

---

[1] "Congress amended 35 U.S.C. § 112 when it passed the Leahy-Smith America Invents Act ("AIA"), and the amendments took effect on September 16, 2012." *Advanced Ground Information Systems, Inc. v. Life360, Inc.*, 830 F.3d 1341, 1343 n.1 (Fed. Cir. 2016) (citing Pub. L. No. 112-29, § 4 125 Stat. 284, 296-97 (2011)).   The '301 Patent issued on July 17, 2001 from a patent application filed on August 13, 1999.   (Doc. 1-1, p. 1).   Therefore, the pre-AIA version of § 112 governs interpretation of the patent-in-suit. *See Life360, Inc.*, 830 F.3d at 1343 n.1.

*Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008) (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996)); *Medical Instrumentation and Diagnostics Corp. v. Elektra AB*, 344 F.3d 1205, 1209 (Fed. Cir. 2003) (citation omitted). Additionally, "[t]he proper construction of a patent's claims is an issue of Federal Circuit law." *David Netzer Consulting Eng'r LLC v. Shell Oil Co.*, 824 F.3d 989, 993 (Fed. Cir. 2016) (quotation omitted).

Claim construction begins with the language of the patent claim itself. *Nystrom v. Trex Co., Inc.*, 424 F.3d 1136, 1142 (Fed. Cir. 2005). "The words of a claim 'are generally given their ordinary and customary meaning' as understood by a person of ordinary skill in the art at the time of the invention." *David Netzer Consulting Eng'r*, 824 F.3d at 993 (quoting *Phillips*, 415 F.3d at 1312-13). The Federal Circuit has recognized "only two exceptions to this general rule: 1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution." *Unwired Planet, LLC v. Apple, Inc.*, 829 F.3d 1353, 1358 (Fed. Cir. 2016) (quotation omitted). For the second exception to apply, the "disclaimer or disavowal of claim scope must be clear and unmistakable . . . ." *Id.* (citation omitted).

Because patent claims "are part of 'a fully integrated written instrument,'" they must be read in light of the patent specification. *Phillips*, 415 F.3d at 1315 (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 978 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996)). In other words, a court must look to the patent specification to determine the meaning and scope of a patent claim. *See e.g., David Netzer Consulting Eng'r, LLC*, 824 F.3d at 993-94. The Federal Circuit has "long emphasized the importance of the specification in claim construction." *Phillips*, 415 F.3d at 1315 (citations omitted). "'Usually, [the specification] is dispositive; it is the single best guide to the meaning of a disputed [claim] term.'" *Id.* (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)).

Along with the specification, a court should "'consider the patent's prosecution history, if it is in evidence,'" when construing a patent claim. *Id.* at 1317 (quoting *Markman*, 52 F.3d at 980). The prosecution history is the complete record of the proceedings before the U.S. Patent and Trademark Office ("PTO"). That history may provide evidence of how the patent applicant and PTO understood the claimed invention, or whether the applicant limited the scope of the invention by disclaiming or disavowing the full scope of a claim term. *Id.*; *Vitronics*, 90 F.3d at 1582-83. However, "because the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than

4

the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Phillips*, 415 F.3d at 1317 (citing *Inverness Med. Switz. GmbH v. Warner Lambert Co.*, 309 F.3d 1373, 1380-82 (Fed. Cir. 2002)).

During claim construction, before considering extrinsic evidence, a court should consider intrinsic evidence, which consists of the patent claims, the specification, and the patent's prosecution history. *See Spectrum Int'l, Inc. v. Sterilite Corp.*, 164 F.3d 1372, 1378 (Fed. Cir. 1998). "'[I]f upon examination of this intrinsic evidence the meaning of the claim language is sufficiently clear, resort to extrinsic evidence, such as treatises and technical references, as well as expert testimony when appropriate, should not be necessary.'" *Id.* (quoting *Digital Biometrics, Inc. v. Identix, Inc.*, 149 F.3d 1335, 1347 (Fed. Cir. 1998)); *see also Interactive Gift Exp., Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1332 (Fed. Cir. 2001) ("Relying on extrinsic evidence to construe a claim is 'proper only when the claim language remains genuinely ambiguous after consideration of the intrinsic evidence.'") (quoting *Bell & Howell Doc. Mgmt. Prods. Co. v. Altek Sys.*, 132 F.3d 701, 706 (Fed. Cir. 1997)).[2]

---

[2] Beretta expressly contends that resort to extrinsic evidence is not necessary to construe the meaning of the disputed claim terms in this action because the intrinsic evidence is clear and unambiguous. (Doc. 30, pp. 9, 13, 18).

One type of patent claim limitation with its own rules of construction is a means-plus-function limitation. In a means-plus-function limitation, a patentee expresses a claim limitation as a function to be performed rather than by reciting the structure or material for performing that function. *See* 35 U.S.C. § 112(f) (2012); 35 U.S.C. § 112, ¶ 6 (2000);[3] *Northrop Grumman Corp. v. Intel Corp.*, 325 F.3d 1346, 1349-50 (Fed. Cir. 2003). Pure functional claiming is not permitted by the Patent Act, and a patentee must disclose the structure or material for performing the claimed function in the patent specification. *See, e.g., Aristocrat Technologies Australia Pty Ltd. v. Int'l Game Tech.*, 521 F.3d 1328, 1333 (Fed. Cir. 2008) (citations omitted). "If the specification does not contain an adequate disclosure of the structure that corresponds to the claimed function, the patentee will have failed to particularly point out and distinctly claim the invention under § 112, ¶ 2, which renders the claim invalid for indefiniteness." *Advanced Ground Info. Sys., Inc. v. Life360, Inc.*, 830 F.3d 1341, 1349 (Fed. Cir. 2016) (quoting *Blackboard, Inc. v. Desire2Learn, Inc.*, 574 F.3d 1371, 1382 (Fed. Cir. 2009) (internal alteration omitted).

Under § 112, ¶ 6, "a means-plus-function claim limitation is limited to the structures disclosed in the specification [for performing the claimed function] and

---

[3] 35 U.S.C. § 112, ¶ 6 (2000) provides as follows: "An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure . . . in support thereof, and such claim shall be construed to cover the corresponding structure . . . described in the specification and equivalents thereof."

equivalents." *Mettler-Toledo, Inc. v. B-Tek Scales, LLC*, 671 F.3d 1291, 1296 (Fed. Cir. 2012) (citation omitted). Thus, evaluation of a means-plus-function claim limitation involves a two-step process. First, a court must "identify the particular claimed function." *Medical Instrumentation and Diagnostics Corp. v. Elektra AB*, 344 F.3d 1205, 1209 (Fed. Cir. 2003) (quoting *B. Braun Med. Inc. v. Abbott Labs.*, 124 F.3d 1419, 1424 (Fed. Cir. 1997)). Second, a court must examine the patent specification to determine the corresponding structure described in the specification for performing the claimed function. *Id.* "Under this second step, structure disclosed in the specification is 'corresponding' structure only if the specification or prosecution history clearly links or associates that structure to the function recited in the claim." *Id.* Structures described in the specification "that do not actually perform the recited function do not constitute corresponding structure and thus do not serve as claim limitations." *Asyst Tech., Inc. v. Empak, Inc.*, 268 F.3d 1364, 1370 (Fed. Cir. 2001) (citing *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 145 F.3d 1303, 1308-09 (Fed. Cir. 1998)); *Acromed Corp. v. Sofamor Danek Group, Inc.* 253 F.3d 1371, 1382 (Fed. Cir. 2001).

With these principles in mind, the Court turns to the patent at issue in this infringement action.

## II.   Background of the Patent-in-Suit

Steyr owns by assignment the '301 Patent, which is directed to a pistol with a housing composed of plastic and with a removable "multifunction metal part" that is inserted into the plastic housing. *See* U.S. Patent No. 6,260,301 (filed Aug. 13, 1999).  According to the patent specification, the invention claimed in the '301 Patent is an improvement over the prior art because all of the moving parts for the trigger mechanism can be mounted on the multifunction metal part before the part is inserted into the plastic housing. *Id.*, col. 1 lines 47-51, col. 2 lines 52-64.  The multifunction metal part is secured in the plastic housing by a shaft that is inserted through holes in the housing and corresponding holes in the multifunction part. *Id.*, col. 1 lines 62-67, col. 2 lines 43-47, col. 4 lines 13-16.  The multifunction metal part is further secured in the housing by a projection from the end of the multifunction part that fits in a recess in the rear wall of the housing. *See Id.*, col. 2 lines 39-42, col. 4 lines 16-18.

The '301 Patent issued from an application filed on August 13, 1999.  *Id.* The original application for the patent contained four claims:  claim 1 was an independent claim, and claims 2-4 each depended upon claim 1.  (*See* Doc. 30-1, pp. 6, 16).[4]  During the prosecution of the patent application in the PTO, the patent

---

[4] An independent patent claim is a claim that stands on its own, without reference to another claim.  A dependent claim refers to a prior claim and incorporates all of the limitations of that prior claim. *See Phillips*, 415 F.3d at 1315 (citation omitted).

examiner rejected all four claims in the application on the grounds that they were indefinite and anticipated by three prior U.S. patents. (Doc. 30-1, pp. 6-11).

In response to the examiner's rejection, the applicant deleted claims 2 and 3 in the application, and amended claim 1 to incorporate the limitations from those claims. (Doc. 30-1, pp. 14, 16). Specifically, the applicant added the following limitations to claim 1: "said multifunction metal part and housing are each provided with a transverse hole which receives a shaft for connecting the housing and the multifunction metal part together, and wherein the housing has a rear wall which is provided with a recess for receiving a projection on the multifunction metal part." (Doc. 30-1, p. 14). The applicant provided that "[c]laim 1 now sets forth with specificity the details for supporting the multifunctional metal part in the housing and this comprises a shaft and projections on the multifunction metal part which interact with the rear wall of the housing." (Doc. 30-1, p. 16). Finally, the applicant also amended claim 4 by adding the word "control" before the phrase "means for locking a barrel in the barrel slide." (Doc. 30-1, pp. 14, 16).

Following those amendments, the examiner rejected amended claim 1 on the grounds that it was anticipated by a prior U.S. patent and found that amended claim 4, which incorporated all of the limitations of amended claim 1, would be allowed to issue if the applicant made a specific revision to the claim. (Doc. 30-1, pp. 21-22). The examiner rejected amended claim 4 as indefinite, finding that "[i]n

claim 4, line 3, the phrase 'a barrel' should be claimed as 'said barrel' if the previously claimed barrel is intended," and the examiner noted that "[c]laim 4 should be allowable if rewritten to overcome the rejection . . . ." (Doc. 30-1, pp. 21-22). The patent applicant made the required revision and amended claim 1 to incorporate the limitations that had been contained in amended claim 4. (Doc. 30-1, pp. 25-26). Specifically, the applicant incorporated the following limitation into claim 1: "the multifunction metal part includes control means for locking said barrel in the barrel slide." (Doc. 30-1, p. 26).

Based on those amendments, the '301 Patent issued on July 17, 2001 with a single claim:

> 1. A pistol comprising a housing; a barrel slide movably mounted on the housing for movement in a firing direction with respect to a barrel; and a trigger mechanism located, at least in part, within the housing, the improvement which comprises a multifunction metal part removably insertable within said housing, said multifunction metal part being provided with guides for the barrel slide and means for supporting the trigger mechanism, said multifunction metal part and housing are each provided with a transverse hole which receives a shaft for connecting the housing and the multifunction metal part together, the housing has a rear wall which is provided with a recess for receiving a projection on the multifunction metal part the multifunction metal part includes control means for locking said barrel in the barrel slide.

'301 Patent, col. 4, lines 5-20. (*See also* Doc. 30-1, p. 29). Steyr alleges that Beretta infringes the sole claim of the '301 Patent.

## III.  **Analysis**

The parties dispute the construction of three claim limitations:  (1) "means for supporting the trigger mechanism;" (2) "the multifunction metal part includes control means for locking said barrel in the barrel slide;" and (3) "housing has a rear wall which is provided with a recess for receiving a projection on the multifunction metal part."  (Doc. 28, p. 2).  The parties agree that the first two claim limitations require construction by the Court, but only Beretta contends that the third limitation requires construction.  (Doc. 28, p. 2).  Steyr contends the third limitation may be construed according to the plain, ordinary meaning of the terms and, therefore, requires no construction by the Court.  (Doc. 28).  The Court will address each of the disputed claim limitations in turn after first dispensing with Beretta's argument that Steyr improperly amended its proposed claim construction after the parties filed their Joint Proposed Claim Construction Statement.

### A.  Beretta's objections to Steyr's amended proposed claim constructions

Pursuant to the Court's Scheduling Order (Doc. 26), the parties exchanged proposed claim constructions for the disputed claim limitations on August 5, 2016.  (*See* Doc. 33-1).  Unable to resolve their disputes regarding the claim limitations, the parties filed a Joint Proposed Claim Construction Statement on August 19,

2016, which identifies the three disputed claim limitations.  (Doc. 28).[5]  In its opening claim construction brief, Steyr proposed claim constructions for the first two disputed claim limitations that are broader than the constructions proposed in its August 5 communication with Beretta.  (*See* Doc. 31, pp. 13, 18; Doc. 32, pp. 1-3; Doc. 32-1, pp. 2-3).  Beretta asserts that it was improper for Steyr to amend its proposed claim constructions after the filing of the parties' Joint Proposed Claim Construction Statement.  (Doc. 32, pp. 1-2).  Beretta argues that the Court should reject Steyr's proposed claim constructions and adopt Beretta's claim constructions based on Steyr's alleged non-compliance with the Court's Scheduling Order and the Joint Proposed Claim Construction Statement.  (Doc. 32, pp. 2-4, 9-10).  The Court is not persuaded.

When the parties exchanged proposed claim constructions on August 5, 2016, both parties reserved the right to modify their proposed constructions.  (Doc. 33-1, pp. 6, 11).  In fact, Beretta expressly reserved "the right to modify its claim construction contentions . . . up until opening claim construction briefs [were] due on September 16, 2016."  (Doc. 33-1, p. 11).  That statement is at odds with Beretta's current contention that it is improper for a party to amend its proposed claim construction after the filing of the Joint Proposed Claim Construction Statement.  More importantly, Beretta has not cited authority to support its

---

[5] The parties did not include their proposed claim constructions in the Joint Proposed Claim Construction Statement, but simply set forth the disputed limitations.  (*See* Doc. 28).

contention that a court should adopt a party's proposed claim construction solely because an opposing party did not comply with the court's scheduling order. (*See* Doc. 32). The Court has a duty to construe a disputed claim limitation, *O2 Micro Int'l Ltd.*, 521 F.3d at 1362 ("When the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it."), and the Court has found no authority indicating that it may abandon that duty when a party does not comply with a scheduling order. Accordingly, the Court will consider Steyr's proposed claim constructions.

B.    Means for supporting the trigger mechanism

The claim limitation, "means for supporting the trigger mechanism," uses means-plus-function terminology, invoking a presumption that the limitation should be construed under § 112, ¶ 6. *Advanced Ground Info. Sys., Inc. v. Life360, Inc.*, 830 F.3d 1341, 1347 (Fed. Cir. 2016) ("If a claim element contains the word 'means' and recites a function, this creates a presumption that the claim is in mean-plus-function form under 35 U.S.C. § 112, ¶ 6.") (quotation omitted). That presumption is not rebutted by the recitation of "structure sufficient to perform the claimed function," and the parties agree that the limitation is written in means-plus-function form. *Id.* (*See also* Doc. 28, p. 2). Therefore, the Court will construe the claim limitation pursuant to § 112, ¶ 6.

### 1. *The claimed function*

As mentioned, in construing a means-plus-function claim limitation, the Court first must identify the claimed function. *Medical Instrumentation and Diagnostics Corp.*, 344 F.3d at 1210. Based on the claim language, the function claimed in the first disputed claim limitation is "supporting the trigger mechanism." '301 Patent, col. 4, ln. 13. The parties agree that this is the claimed function. (Doc. 30, p. 13; Doc. 31, p. 13 ("the function is clearly to 'support' or mount the trigger mechanism"); Doc. 32, p. 5 ("Plaintiff correctly identifies the claimed function, which is to 'support' the trigger mechanism")).

### 2. *The structure corresponding to the claimed function*

The Court's next step in the construction of the disputed means-plus-function claim limitation is to identify the corresponding structure described in the specification for supporting the trigger mechanism. *See Medical Instrumentation and Diagnostics Corp.*, 344 F.3d at 1210. The parties dispute which structures correspond to the claimed function and, therefore, propose different constructions for the claim limitation. The parties' proposed constructions are reproduced in the table below:

| Claim Limitation: "means for supporting the trigger mechanism" | |
|---|---|
| Steyr's Proposed Construction | Beretta's Proposed Construction |
| "A multifunction metal part including | "Claim must be limited to the following disclosed structure in the specification with reference to Figs. 1-6 which |

| any desired holes and pins mounted therein such that the trigger and trigger parts are all mounted on the multifunction metal part, and equivalents thereof." <br><br> (Doc. 31, p. 13).[6] | corresponds to the claimed 'supporting' function under § 112, ¶ 6. <br><br> 'A trigger 20 is mounted in a bearing pin 21, which is inserted in the multifunction part 10. The spring of a trigger safety device 22 is supported on a pin 23. Another moving part (for example another safety device) is supported in a further pin 24. A pivoting pin 25 is inserted in the rear part of the multifunction part. These pins 23, 24, 25 are likewise mounted in the multifunction part. Finally, a guide 27 for a release lever 26 is formed on the multifunction part 10. All the moving parts of the trigger apparatus are thus connected to the multifunction part 10. In consequence, all these parts can be mounted on the multifunction part 10 first of all, before the complete unit is finally inserted into the housing 1.' <br><br> 'Furthermore, various holes are provided in the two side parts 30, 31, to be precise a hole 38 for the bearing pin 21, a hole 39 for the pin 23, a hole 40 for the other pin 24 in the front part and, in the rear part, a hole 41 for the pivoting pin 25 and a hole 42 for a further part of the trigger mechanism. The holes 41, 42 as well as the guide 27 in the configuration shown relate to a trigger device according to AT-UM Application 477/98.'" <br><br> (Doc. 30, p. 12).[7] |

Beretta's proposed claim construction quotes directly from the '301 Patent

specification and includes all of the structural elements related to the trigger

---

[6] In its communication with Beretta on August 5, 2016, Steyr proposed the following construction for the disputed limitation: "a multifunction metal part including a plurality of holes and pins mounted in holes in the multifunction metal part to support the trigger elements. Pursuant to 35 U.S.C. § 112, ¶ 6, the construction also includes equivalents thereof." (Doc. 32-1, p. 2).

[7] The numbers appearing after specific structural elements in the '301 Patent specification and in Beretta's proposed claim construction refer to structures shown in Figures 1 – 6 of the '301 Patent. *See* '301 Patent, Figs. 1-6; (*See also* Doc. 30, p. 12).

mechanism that are set forth in the specification. *See* '301 Patent, col. 2-3; (*See also* Doc. 30, p. 12).[8]  Steyr objects to Beretta's proposed claim construction on the grounds that it is too restrictive and includes structures that do not correspond to the claimed function of supporting the trigger mechanism. (Doc. 33, pp. 14-15).

Steyr specifically argues that the trigger and trigger parts, which are included in Beretta's proposed claim construction, do not correspond to the claimed function because they do not support the trigger mechanism. (Doc. 33, p. 14).  Indeed, nothing in the specification clearly links or associates the trigger itself, the trigger's safety devices, or the release lever to the claimed function of supporting the trigger mechanism. *See* '301 Patent, col. 1-4.  In addition, the Federal Circuit has indicated that the item that is acted upon in a means-plus-function claim limitation cannot be part of the structure that performs the action. *See Northrop Grumman Corp. v. Intel Corp.*, 325 F.3d 1346, 1352 (Fed. Cir. 2003) ("The signals that are monitored by the 'means for monitoring' cannot be part of

---

[8] Beretta argues that the Court should adopt its proposed claim construction in part because Steyr "disclaimed any and all broader coverage" during the prosecution of the '301 Patent. (Doc. 30, pp. 14-15; Doc. 32, p. 9).  However, Beretta did not point to any statement the patent applicant made during the prosecution of the patent that could be interpreted as a disclaimer or waiver of claim coverage. (*See* Doc. 30; 32).  Moreover, there is nothing in the record before the Court to show that the applicant disclaimed or waived claim coverage through "a clear and unmistakable disavowal" of claim scope during prosecution. (*See* Doc. 30-1); *see also 3M Innovative Prop. Co. v. Tredegar Corp.*, 725 F.3d 1315, 1325-26 (Fed. Cir. 2013) (finding that an amendment made to narrow a claim during prosecution was not a disclaimer of claim scope and noting that "in order for prosecution disclaimer to attach, the disavowal [of claim scope] must be both clear and unmistakable.").  As a result, the Court is not persuaded by Beretta's arguments regarding an alleged disclaimer or waiver of claim terms during prosecution of the '301 Patent.

the structure that does the monitoring.") (citing *O.I. Corp. v. Tekmar Co.*, 115 F.3d 1576, 1581 (Fed. Cir. 1997)).  Thus, the Court finds that the trigger (20), the spring of a trigger safety device (22), and the release lever (26) do not correspond to the function of supporting the trigger mechanism and should not be included in the construction of the "means for supporting the trigger mechanism" claim limitation.[9]

The same is not true for the multifunction metal part (10), the guide (27) for the release lever, and the specific pins (21, 23, 24, 25) and holes (38, 39, 40, 41, 42) described in the patent specification.  The specification provides:

> A trigger 20 is mounted in a bearing pin 21, which is inserted in the multifunction part 10.  The spring of a trigger safety device 22 is supported on a pin 23.  Another moving part (for example another safety device) is supported in a further pin 24.  A pivoting pin 25 is inserted in the rear part of the multifunction part.  These pins 23, 24, 25 are likewise mounted in the multifunction part 10.  Finally, a guide 27 for a release lever 26 is formed on the multifunction part 10.  All the moving parts of the trigger apparatus are thus connected to the multifunction part 10.  In consequence, all these parts can be mounted on the multifunction part 10 [] before the complete unit is finally inserted into the housing 1.

> [V]arious holes are provided in the two side parts [of the multifunction part], to be precise a hole 38 for the bearing pin 21, a hole 39 for the pin 23, a hole 40 for the other pin 24 in the front part and, in the rear part, a hole 41 for the pivoting pin 25 and a hole 42 for a further part of the trigger mechanism.

(*See* Doc. 1-1, Col. 2 lines 52-58).

---

[9] The numbers appearing in parentheses after a structural element in this Claim Construction Order refer to the structures illustrated in Figures 1-6 of the '301 Patent.

Based on the language above, the trigger and certain trigger safety devices are mounted or supported on specific pins, which are mounted in corresponding holes in the multifunction metal part. Likewise, the release lever is connected to or mounted on the multifunction part by the guide formed on the multifunction part. Additionally, in the patent specification, the term "mounted" appears repeatedly, and the term is used consistent with the commonly understood definition of the verb "mount," which means "to attach to a support." *See Mount*, MERRIAM-WEBSTER DICTIONARY, http://www.merriam-webster.com/dictionary/mount; '301 Patent, col. 1-4.[10] Thus, the multifunction metal part, the guide for the release lever, and the specific pins and holes disclosed in the patent specification all correspond to the function of supporting the trigger mechanism. Steyr does not explicitly argue otherwise. (*See* Doc. 33, pp. 13-14).

Rather, Steyr contends that the means for supporting the trigger mechanism should not be limited to the specific embodiment disclosed in the specification, but should be broadly construed to include the multifunction metal part with any desired holes and pins in it. (*See* Doc. 33, p. 13-15). Steyr points to following language in the specification to support its proposed claim construction:

---

[10] "Courts may rely on dictionary definitions when construing claim terms, so long as the dictionary definition does not contradict any definition found in or ascertained by a reading of the patent documents." *3M Innovative Properties Co. v. Tredegar Corp.*, 725 F.3d 1315, 1321 (Fed. Cir. 2013).

The description of an exemplary embodiment is not intended to limit the invention in any way to a specific method of construction or method of operation of a pistol. Any desired holes and guides can thus be applied to the multifunction part 10, at any desired points.

'301 Patent, Col 3 line 21 – Col. 4 line 3; (Doc. 31, p. 14). Neither Federal Circuit precedent nor the language of the patent specification supports Styer's proposed claim construction.

First, the patent specification's statement that "[a]ny desired holes and guides can thus be applied to the multifunction part 10, at any desired points" is not sufficient to support Steyr's proposed claim construction. The '301 Patent specification uses the terms "pins," "holes," and "guides" differently, and there is no indication that the terms are interchangeable. *See* '301 Patent, col. 1-4. Thus, the specification does not state that any desired <u>pins</u> could be applied to or mounted in the multifunction metal part; instead the specification only discloses specific pins that are mounted in corresponding holes in the multifunction metal part. *See Id.*, col. 2 lines 52-58, col. 3 lines 10-14. Moreover, the specification clearly associates the pins disclosed with the claimed function of supporting the trigger mechanism. *See Id.* As a result, the specific pins disclosed in the specification for mounting or supporting the trigger mechanism correspond to the claimed function and must be included in the construction of the disputed claim limitation, even if the statement that "any desired holes and guides can [] be applied to the multifunction part" is sufficient to satisfy the requirements of § 112.

The '301 patent's prosecution history supports this conclusion in light of the patent examiner's requirement of specificity to ensure a definite claim that was not anticipated by three prior U.S. patents. (*See* Doc. 30-1, pp. 8-11, 17).

Next, Steyr argues that the disputed claim limitation should not be limited to the specific embodiment of the invention disclosed in the specification. (*See* Doc. 31, p.17; Doc. 33, pp. 17-18). Steyr's argument is unavailing because the Federal Circuit has held that "[i]f a patentee chooses to disclose only a single embodiment [in the patent specification], then any means-plus-function claim limitation will be limited to the single disclosed structure and equivalents thereof." *Mettler-Toledo, Inc.*, 671 F.3d at 1296 (citing *Nomos Corp. v. Brainlab U.S.A., Inc.*, 357 F.3d 1364, 1368 (Fed. Cir. 2004)); *see also Chiuminatta Concrete Concepts, Inc.*, 145 F.3d at 1308-09 (limiting a means-plus-function clause to the corresponding structure of the only disclosed embodiment of the invention). The Court has found nothing to suggest that Steyr can avoid the operation of that authority simply by disclaiming any intent to limit the invention to the embodiment disclosed in the specification or by stating that "any desired holes and guides can [] be applied to the multifunction part . . . ." *See* '301 Patent, col. 3 line 21 – col 4 line 3. The '301 Patent discloses a single embodiment of the claimed invention; therefore, the claim limitation, "means for supporting the trigger mechanism," must be limited to the structures of

that single embodiment that perform the claimed function, and equivalents thereof. None of the authority Steyr cites in its briefs compels a different result.

Steyr relies on *Phillips v. AWH Corporation* to support its assertion that "the Federal Circuit has 'repeatedly warned' against confining the claims of a patent to the specific embodiments described in the specification." (Doc. 31, p. 9 (citing 415 F.3d at 1323); Doc. 33, p. 17). Steyr's reliance on *Phillips* misses the mark because *Phillips* did not involve the construction of a means-plus-function limitation. *See Phillips*, 415 F.3d at 1311 ("[W]e agree with the panel that the term 'baffles' is not means-plus-function language that invokes 35 U.S.C. § 112, ¶ 6.").[11] Even so, Steyr argues that the general rule from *Phillips* applies equally to a means-plus-function limitation, and it relies on *Acromed Corporation v. Sofamor Danek Group, Inc.*, 253 F.3d 1371 (Fed. Cir. 2001), to support its argument. (Doc. 33, pp. 17-18). In *Acromed*, the Federal Circuit held that structural details from the embodiment of the invention disclosed in the specification should not be included in the construction of a means-plus-function limitation when those details are not necessary to perform the claimed function. 253 F.3d at 1382-83. The Federal Circuit did not hold or suggest that the general rule against limiting a patent claim

---

[11] The cases cited in *Phillips* to support the general rule that claims should not be limited to the specific embodiments described in the specification did not involve the construction of a means-plus-function claim limitation. *See Nazomi Comm., Inc. v. ARM Holdings, PLC*, 403 F.3d 1364 (Fed. Cir. 2005); *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898 (Fed. Cir. 2004); *Teleflex, Inc. v. Ficosa North America Corp.*, 299 F.3d 1313 (Fed. Cir. 2002); *SRI Int'l v. Matsushita Elec. Corp. of America*, 775 F.2d 1107 (Fed. Cir. 1985).

to the specific embodiments disclosed in the specification applies equally to means-plus-function claim limitations. *See id.* Moreover, more than a decade after deciding *Acromed*, the Federal Circuit held that "[i]f a patentee chooses to disclose a single embodiment, then any means-plus-function claim limitation will be limited to the single disclosed structure and equivalents thereof." *Mettler-Toledo, Inc., LLC*, 671 F.3d at 1296 (citation omitted). Accordingly, *Acromed* does not support Steyr's proposed claim construction, and the Court finds that the claim limitation, "means for supporting the trigger mechanism," must be limited to the structures of the single disclosed embodiment that perform the claimed function and equivalents thereof.

3.  *The Court's construction of "means for supporting the trigger mechanism"*

Based on the foregoing, the Court construes the claim limitation "means for supporting the trigger mechanism" as a means-plus-function limitation with the following function and structure:

The claimed function is supporting the trigger mechanism.

The corresponding structure for the claimed function, with reference to Figures 1-6 of the '301 Patent, is:

- a bearing pin (21) for mounting a trigger (20), which is inserted in the multifunction part (10);
- a pin (23) for supporting the spring of a trigger safety device (22), which is mounted in multifunction part (10);

- a pin (24) for supporting another moving part (for example another safety device), which is mounted in multifunction part (10);
- a pivoting pin (25) inserted or mounted in the rear part of the multifunction part (10);
- a guide (27) for a release lever (26), which is formed on the multifunction part (10); and
- various holes provided in the two side parts (30, 31) of the multifunction part (10), to be precise a hole (38) for the bearing pin (21), a hole (39) for the pin (23), a hole (40) for the other pin (24) in the front part and, in the rear part, a hole (41) for the pivoting pin (25) and a hole (42) for a further part of the trigger mechanism;
- and equivalents thereof.

C.    The multifunction metal part includes control means for locking said barrel in the barrel slide

The second disputed claim limitation, "the multifunction metal part includes control means for locking said barrel in the barrel slide," uses means-plus-function terminology and does not recite structure sufficient to perform the claimed function, creating an unrebutted presumption that the limitation should be construed under § 112, ¶ 6. *Life360, Inc.*, 830 F.3d at 1347. Moreover, the parties agree that the claim limitation is written in means-plus-function form. (Doc. 28, p. 2). Therefore, the Court will construe the claim limitation pursuant to § 112, ¶ 6.

The parties' proposed constructions for the second disputed claim limitation are reproduced in the table below:

| Claim Limitation: "the multifunction metal part includes control means for locking said barrel in the barrel slide" | |
|---|---|
| Styer's Proposed Construction | Beretta's Proposed Construction |
| "A bridge which spans the sides of the multifunction metal part, and equivalents thereof."<br><br>(Doc. 31, p. 18).[12] | "Claim must be limited to the following disclosed structure in the specification with reference to Figs. 4-6 which corresponds to claimed 'barrel locking' function § 112, ¶ 6.<br><br>'a multifunction metal part 10 which comprises a right-hand and left-hand side part 30, 31 which are connected to one another via a first bridge 32, a second bridge 33 (which, at the same time, is the control means for locking the barrel 3) and at the rear, by a third bridge 36' and<br><br>As specifically defined by patentee in the specification[,] claim must also be interpreted as limited to 'the control means for locking are formed on the multifunction part.'"<br><br>(Doc. 30, p. 17). |

### 1.    *Identifying the claimed function*

For the second disputed claim limitation, Steyr asserts that the claimed function is to lock the barrel in the barrel slide. (Doc. 31, p. 19; Doc. 33, p. 16). In Beretta's opening brief, its proposed construction of the second disputed claim limitation identifies the claimed function as "barrel locking." (*See* Doc. 30). In its response brief, Beretta argues that the claimed function should be "control means for locking said barrel in the barrel slide," but Beretta does not explain how its

---

[12] In its August 5, 2016 communication to Beretta, Steyr proposed the following construction for the disputed claim limitation: "A bridge which spans the sides of the multifunction metal part and engages the control attachments on the barrel to lock the barrel in the barrel slide. Pursuant to 35 U.S.C. § 112, ¶ 6, the construction also includes equivalents thereof." (Doc. 32-1, pp. 2-3).

proposed function is significantly different from the previously-stated function of "barrel locking." (Doc. 32, p. 12). Additionally, Beretta's newly-proposed function incorrectly incorporates the "means" term from the means-plus-function limitation into the claimed function. *See Chiuminatta Concrete Concepts, Inc.*, 145 F.3d at 1308 (noting that the "'means' term in a means-plus-function limitation is essentially a generic reference for the corresponding structure disclosed in the specification"). Based on the language of the claim, the Court finds that the function claimed in the limitation, "the multifunction metal part includes control means for locking said barrel in the barrel slide," is locking the barrel in the barrel slide.

2. <u>*Identifying the corresponding structure for the claimed function*</u>

To construe the means-plus-function limitation, the Court must identify the corresponding structures described in the patent specification for locking the barrel in the barrel slide. *See Medical Instrumentation and Diagnostics Corp.*, 344 F.3d at 1209. The parties dispute which structures described in the patent specification correspond to the claimed function.

Beretta argues that the following structural elements identified in the specification correspond to the claimed function:

> [A] multifunction metal part 10, comprising right and left hand side parts [30, 31]. These side parts also must be connected to each other by a first bridge 32 and a second bridge 33, which must be present to function as the control means for locking the barrel, and a third bridge

> 36 must also be present as part of the multifunction metal part locking structure. . . . Additionally, . . . the control means for locking the barrel, including bridge 33, and all other bridges, must be "formed" on the multifunction metal part . . . .

(Doc. 30, p. 19). Accordingly, Beretta includes all of those elements in its proposed claim construction. (*See* Doc. 30, p. 17). Steyr argues that Beretta's proposed construction is too restrictive and includes structures that are unrelated to the claimed function. (Doc. 33, pp. 16-18). Steyr contends that only the second bridge corresponds to the claimed function. (Doc. 31, p. 19).

Beretta did not point to anything in the patent specification or prosecution history that clearly links or associates all of the structural elements included in its proposed construction to the claimed function of locking the barrel in the barrel slide. (*See* Doc. 30; Doc. 32). Upon examination, the Court finds nothing in the patent specification or prosecution history that clearly associates the first bridge or the third bridge to the barrel-locking function. Accordingly, those structures do not correspond to the claimed function, and they should not be included in the construction of the disputed claim limitation. *See Asyst Tech., Inc.*, 268 F.3d at 1370; *see also Mettler-Toledo, Inc.*, 671 F.3d at 1296.

The '301 Patent specification explicitly defines the second bridge connecting the right-hand and left-hand side parts of the multifunction metal part as "the control means for locking the barrel 3" and, therefore, clearly associates the second bridge with the claimed barrel-locking function. '301 Patent, col. 2, lines 65-67,

col. 3 lines 1-2.  As a result, the second bridge connecting the right-hand and left-hand sides of the multifunction metal part corresponds to the function of locking the barrel in the barrel slide and must be included in the construction of the second disputed claim limitation.[13]  This does not end the analysis, however, because the specification provides further information regarding the means for locking the barrel in the barrel slide.

The patent specification states that "[i]n the case of a pistol having a barrel which can be locked in the barrel slide, the invention achieves a further simplification in that the control means for locking are formed on the multifunction part."  '301 Patent, Col. 2 lines 10-14.  According to Beretta, that statement mandates that the control means, or second bridge, "cannot be a separately added piece[] or part[]," and instead must be part of a "unitary 'multifunction metal part' formed as one piece with barrel locking structure and function."  (Doc. 30, pp. 19-20).  Beretta's interpretation of the statement "formed on the multifunction part" suggests that the multifunction metal part and second bridge must be formed from a single piece of metal.  But that interpretation is at odds with the description of the

---

[13] During prosecution of the patent application in the PTO, the patent examiner rejected claim 4 in the application in part because claim 4 was indefinite.  (*See* Doc. 30-1, pp. 7-8).  The patent examiner asked, "[i]n claim 4, what portion or part of the multifunction metal part is intended to correspond to the claimed 'means for locking a barrel to the barrel slide'?"  (Doc. 30-1, pp. 7-8).  Based on the record before the Court, the patent applicant responded to the examiner's rejection by referring to "reference numeral 33," which corresponds to the second bridge, and by stating that "[c]laim 4 has been amended so as to more specifically claim the control means."  (Doc. 30-1, p. 16).  Thus, the '301 Patent's prosecution history indicates that the second bridge corresponds to the control means for locking the barrel in the barrel slide.

invention in '301 Patent specification, which provides that "[t]he multifunction part 10 can be produced in various ways, . . . [including] by welding individual parts together . . . ." '301 Patent, col. 3 lines 17-20. Based on that language, the specification contemplates that the second bridge may be a separate piece that is formed on the multifunction metal part by welding the pieces together; the specification does not state that the multifunction metal part and second bridge must be a unitary piece formed from a single piece of metal.

The patent specification provides not only that the control means for locking the barrel is formed on the multifunction metal part, but also that the barrel (3) has control attachments (4). '301 Patent, Col. 2 lines 33-24. In its opening claim construction brief, Steyr describes the movement of the barrel when the pistol is fired and the way in which the barrel locks in the barrel slide. (Doc. 31, pp. 20-21). Steyr relies on the figures from the '301 Patent to support its explanation. (Doc. 31, pp. 20-21).[14] As explained by Steyr in its brief, Figures 1 and 6 show that the second bridge (33) is shaped to interact with the control attachments (4) on the barrel (3). (Doc. 31, pp. 18, 20-21); '301 Patent, Figs. 1, 6. From the

---

[14] In its response brief, Beretta seizes upon Styer's explanation for how the control means perform the function of locking the barrel in the barrel slide to argue that the second bridge (33) must be limited to the specific structural features described in Styer's opening claim construction brief even though those features are not identified in the patent specification. (Doc. 32, pp. 12-14, 16). Beretta did not cite authority indicating that the scope of a means-plus-function claim limitation can be limited to structures described in a party's brief when those structures are not identified in the patent's specification or prosecution history, and the Court has found no such authority.

structures shown in Figures 1 and 6 of the '301 Patent, the second bridge (33) must be able to engage, or interact with, the control attachments (4) on the barrel (3) to perform the function of locking the barrel in the barrel slide; therefore, that structural feature of the bridge corresponds to the claimed function and should be included in the construction of the means-plus-function claim limitation.

3. *The Court's construction of "the multifunction metal part includes control means for locking said barrel in the barrel slide"*

Based on the discussion above, the Court construes the claim limitation "the multifunction metal part includes control means for locking said barrel in the barrel slide" as a means-plus-function limitation with the following function and structure:

The claimed function is locking the barrel in the barrel slide.

The corresponding structure for performing the claimed function, with reference to Figures 1-6 of the '301 Patent, is:

a bridge (33) that connects the right-hand and left-hand sides (30, 31) of the multifunction metal part (10) and that engages, or interacts with, the control attachments (4) on the barrel (3) to lock the barrel in the barrel slide, and equivalents thereof.

D. Housing has a real wall which is provided with a recess for receiving a projection on the multifunction metal part

The parties dispute whether the claim limitation, "housing has a real wall which is provided with a recess for receiving a projection on the multifunction metal part," requires construction by the Court. (Doc. 28, p. 2). Beretta argues

that this limitation requires construction because it must be construed in accordance with the specific definition set forth in the patent specification. (*Id.*, p. 3). Specifically, Beretta contends that based on "the patentee's own definition and lexicography any recess present can only be that which receives a projection from a unitary, or one piece multifunction metal part." (Doc. 30, p. 22) (emphasis omitted). Accordingly, Beretta invites the Court to construe the disputed claim limitation as follows: "a recess that receives a projection [from] a unitary, one piece multifunction metal part." (*Id.*).

Beretta argues that only a unitary, one piece multifunction metal part could successfully interact with a recess in the rear wall of the housing. (Doc. 30, p. 23). To support that argument, Beretta relies on a portion of the patent specification discussing the disadvantages of pistols with plastic housings that were made before the invention claimed in the '301 Patent. The Court is not persuaded.

The '301 Patent specification describes disadvantages that are overcome by mounting the moving parts of the pistol to the multifunction metal part before the metal part is inserted into the pistol's plastic housing. '301 Patent, col. 1 lines 20-61. The specification does not restrict the multifunction metal part to a unitary piece formed from one piece of metal. *See id.* Moreover, Beretta's proposed construction of the third disputed claim limitation is contrary to the specification's statement that "[t]he multifunction metal part 10 can be produced . . . by welding

30

individual parts together." *Id.*, Col. 3 lines 17-20. Accordingly, Beretta's proposed construction is not supported by the language of the patent specification, and it improperly inserts additional limitations into the claim.

Beretta also asserts that the '301 Patent's prosecution history supports its proposed construction of the third disputed claim limitation. Specifically, Beretta points to the patent applicant's statement that the amended claim 1 in the patent application "now sets forth with specificity the details for supporting the multifunction metal part in the housing and this comprises a shaft and projections on the multifunction metal part which interact with the rear wall of the housing." (Doc. 30, p. 23 (quoting Doc. 30-1, p. 16)). That statement, however, does not support Beretta's argument that only a unitary, one piece multifunction metal part could interact with a recess in the rear wall of the housing, and, based on the record before it, the Court finds nothing in the patent's prosecution history that supports Beretta's proposed claim construction.

For its part, Steyr contends that the claim limitation, housing has a real wall which is provided with a recess for receiving a projection on the multifunction metal part, does not require construction by the Court because the meaning of the limitation is readily apparent and "involves nothing more than the application of a widely accepted meaning of commonly understood words." (Doc. 28, p. 3). The Court agrees. The meaning of the claim limitation, "housing has a real wall which

is provided with a recess for receiving a projection on the multifunction metal part," is clear on its face. Thus, the Court concludes that the third disputed claim term does not require construction by the Court.

## IV. Conclusion

The Court construes the three disputed claim limitations as set forth above in this Memorandum Opinion and Claim Construction Order.

**DONE** and **ORDERED** this April 19, 2018.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE